Good morning. First case on our call of the docket today, Wednesday, January 18, 2012, is Agenda Number 5. Case Number 111928, Eileen Jackson v. Board of Election Commissioners. Counsel for the appellant. Good morning. May it please the Court, my name is Randy Crompton, and I'm the attorney for the appellant candidate, Kamalila Earls, who is present in court this morning. In November 2010, Ms. Earls filed her nomination papers with the Chicago Board of Elections to have her name placed on a ballot for the Office of Aldermen of the 28th Ward in the City of Chicago for the February 22, 2011, Chicago Municipal Election. As part of her nomination papers, she filed a significant candidacy in which she unostated that she was qualified to hold said office. Shortly thereafter, the appellee filed an objection to Earls' nomination papers, arguing that the significant candidacy was invalid, as the candidate was not qualified to hold said office due to a violation of the Illinois Municipal Code, specifically Section 533-1-10-5B, which states in relevant part that a person is not eligible for an elective municipal office if that person is in arrears in the payment of a tax or other indebtedness due to a municipality. This section, in the past, was interpreted that as long as a person paid their debt before they took office, it was legal, until this honorable court made this decision in Sinkers v. The Village of Stigney. The 2011 election was the first time the Chicago Electoral Board had to deal with this issue post the Sinkers decision. In Earls' case, she filed her nomination papers, which as I stated included her significant candidacy that she was qualified to hold the Office of Aldermen of the 28th Ward. In addition, prior to the end of the filing period for her nomination papers, Earls went to the City of Chicago, the Department of Revenue, and asked the City of Chicago, Do I owe the City of Chicago any money? Earls received a letter from the Department of Revenue that was entitled, Entitled, A Letter of No Indebtedness. It stated that the Department of Revenue had researched its streams of revenue and did not find any debts owed by Earls. It was not until after the filing period had ended, and the filing of the objection period had ended, that Earls and her husband received a letter allegedly from the Department of the County Assessor's Office dated December 6, 2010, alleging that she and her husband were owners of three properties in Chicago which had exercised homeowner exemptions. The objector argued that she therefore was in violation of the Municipal Code because she was indebted to the City for the money owed for taking down proper exemptions on at least two of the properties. Why is it that Sinkis is not dispositive here in this case? I believe Sinkis is not dispositive in this particular case because this particular case is different from Sinkis in that I don't believe that this is the type of debt that the court had envisioned when it made its ruling in Sinkis. The issue here is whether or not property taxes is a city debt. We argue, and the Board of Elections agreed with the Circuit Court affirming, that property taxes is not a city debt, it's a county debt. And the reason for that is... Is there a city portion of the property tax listed on the bill that's in there? There is a... On the tax bills, there is a portion where it does list city taxes. However, in the Sinkis case, the village of Sidney was able to go to the court and ask the court for relief in that matter. In this particular case, the City of Chicago cannot go to the court directly and ask the court for relief. What does the city do in order to collect? In this case, the city would have to go to its collector, which is the county, and take action against the county. It would not have a standard to take action against Ms. Earls and her husband in this particular instance. Excuse me, could Ms. Earls pay directly just that portion that was owed to the city? I do not believe so. I am not sure. I do not believe so. The tax bill comes out, and there are sections delineated as to what part of the taxes go to various agencies and municipalities. But it is one bill, and the bill is paid to the county treasurer's office. It is not paid to the Department of Revenue. And she did receive a letter of no indebtedness from the City of Chicago's Department of Revenue, which is what she relied on when she filed her statement of candidacy, that she was not indebted to the City of Chicago and not in violation of the municipal code. When did her alleged indebtedness to the city accrue? Well, she did not become aware of this until sometime in December, after the filing period for the petitions the nomination papers had passed. So knowledge is a component of this? I believe so. In the Sinkis case, and that's an issue, in the Sinkis case, in that case he ignored the fact that he had received a citation. He did not remedy the fact that he had the citation of the $100, and therefore when he did file his nomination papers, he was determined not to be a valid candidate. However, in this case, the candidate had no knowledge of this indebtedness. Is there any dispute on the knowledge factor on the time, on the time she was notified? No, I do not believe so. There is no dispute that she was notified. She received a letter from the county assessor. I believe the letter was dated December 6th, but she received it sometime after December 6th that she was allegedly indebted to the county. And because she was in a political campaign, she decided to pay the debt because she did not want to use it against her as a candidate. It was not the mission of any guilt or that she owed the money. It's simply she was in a political campaign, and she did what she thought was expedient in a campaign by paying the debt. Mr. Crumpton, I'm interested in the relief that you're seeking. I believe in your brief you talk about if we agree with your argument, a special election, but then cite no authority for that. So my question is, if we do agree with your argument, how do we, why wouldn't the request and remedy of a special election, why wouldn't that be waived in light of the fact that you didn't give this court any legal support for that position? Well, my candidate will like a special election. I do not believe this is a new case. It's a new issue. This is the first time that we're dealing with these issues with regards to election law. I do not believe that that position will be waived in a, and my candidate would like a special election as a remedy. So you're just saying that it's an issue of first impression and we should just find that a special election is the appropriate remedy? Is that your position? My position is that, yes, it is an issue of first, it is an issue that we're dealing with for the first time, that the Chicago Board of Elections dealt with for the first time, in interpreting the Stinkin's matter with regards to these issues, and the candidate will like to have a special election. The people of the 20th Ward had signed nomination petitions for her to have a special election. She has her name to be placed on the ballot. She's deserving of an opportunity to have a race against the person who did become the alderman, and she's seeking to have that election. It seems to me that the importance of this case has to do with what is actually deemed a debt owed to the city. But you've raised some other issues, including the fact that she received a no indebtedness letter from the city. Is that, should the case hinge on that, the fact that the city said there was no debt? And one more question, following up on Justice Garment's question, does it matter whether the candidate knew there was a debt, if, in fact, there was a debt owed? You seem to indicate that she had no knowledge of this until after the filing period had ended. Should we decide it on those basis? Again, the most important thing, I think, for the future is whether or not this is a debt. I do think that those issues are very important. I think that the fact that she did receive from the city of Chicago the Department of Revenue is something that's no indebtedness owed by her, and she relied on that in filing her nomination papers. I think that's critical, as well as the fact that she had no knowledge of this issue. The objector is going to argue that the fact that she didn't file, that she had all these three properties that she was getting a tax exemption, that she should put her on notice. However, in the transcripts at the hearing, she testified that she was not the person who took care of the properties that her husband did, that she did not file the homeowners exemptions, and she was unaware as to the fact that these homeowners exemptions were being taken. And she did not, the attention of these exemptions was brought about by the current alderman at that time who went to the county assessor's office to make them aware of this situation, which I think that could lead to various issues in the future with regards to these type of issues. I think that people, in the interest of the public, I think it's more important for better access and for the public interest that people at least know that there is a debt owed and they have an opportunity to cure it before they are not allowed to be placed on the ballot. In this instance, Ms. Earls, it was determined by the Chicago Board of Elections and then it was affirmed by the circuit court that this was not a city debt, it was a county debt, and therefore Ms. Earls' days would be on the ballot until February 18th of Friday, the Friday before the election, which is the following Tuesday, and Monday was a holiday. And so she had no opportunity to get any redress in regards to these issues, and she was not, her name was not placed on the ballot. Mr. Compton, with regard to your discussion on debt, isn't it up to us to determine what the words of what debt means? For instance, the phrase, tax due to the municipality. That tax, does that mean it's a debt or is it, the word due, is that another interpretation, could you have another interpretation, paid to the city as due to the city? I mean, it's derived from what you pay to the county, and so therefore from there the county has money due to the city that they will decide how much. I mean, I think that these issues raise, this particular case raises a lot of different issues. For instance, what The question is, is it due by her to the city, or is it due by the county to the city? I think that's a great question. I believe that even though that she had not paid the taxes to the county, the city, as I pointed out, had to bring an action against the county, and then I believe it was the county that would therefore have to bring an action against Ms. Earls. And so I believe that the city, the county would owe the city, would be indebted to the city for taxes it had not collected from Ms. Earls in this instance, and not Ms. Earls owing a debt to the city. And I believe, well, the case law says that read the plain language of section 3-1-10-5 of the Eleanor Municipal Code. The debt has to be due to the municipality. Where the statutory language is plain, ordinary, and unambiguous, the court is bound to enforce the law as written and not resort to other tools of statutory construction. The court cannot depart from the plain language of the statute by reading to exceptions, limitations, or conditions not expressed by the legislature. Nor can a court search for subtle intentions of the legislature. The plain language of the statute is a debt which is due to the municipality. The City of Chicago Department of Revenue issued a no-indebtedness letter to Ms. Earls. She relied on that no-indebtedness letter in filing in her nomination papers. And I do not believe that the debt is a city debt, it was a county debt. In the letter received from Ms. Earls, it said that she was to pay the county treasurer, that it came on the county's letterhead. But isn't the county an agent for the city to collect these taxes? In other words, there would be no liability to the county for something apart from the city's tax obligation. I think if you get into these type of cases and those type of interpretations, it can really complicate things. And how far does this think it's going to go? With state income taxes, a portion of that goes to the city. So if a person doesn't pay their state income tax or federal income tax, a portion of that may go to the city. So if a person doesn't pay those taxes, could they be ruled off the ballot or not have ballot access? And that may be an argument that could be made under the Sinkers case, if it was allowed to stand the way it is. Could people not have ballot access because they owe back taxes to the state or the federal government? I think that's an agonist to the Earls case, what's going on with Ms. Earls in this particular case. So Ms. Earls, well, Ms. Earls was not allowed an opportunity to be on the ballot. The people that signed her nomination papers did not have the opportunity to vote for her, based on the fact that the appellate court decided that she was in violation of the municipal code on property taxes for a tax that we argue was not due to the city. It was not a municipal debt. It was a county debt. In addition, we believe that the public's interest in ballot access overrides the municipality's interest in collecting these small debts. And people should have the right to associate and vote for the candidates of their choice. And that right should not be burdened by the city's interest in collecting such small debts. You asked about what kind of remedy could we fashion. I can't think of the name of the case. It was about 18 years ago. I have trouble with 18 days now. But 18 years ago, James Williams, who was a sitting judge, associate judge, ran for election and was declared the winner. A lawsuit was pending. He was sworn in, certified after the general election was held. And about a year after his election and certification, the trial judge removed him from the bench and substituted the plaintiff in that seat. It went to the appellate court. And in the appellate court, acting as Solomon, they decided to split the baby, and they kept both on the bench. This court reached back on its own motion without any appeal to this court. Took the case, because in doing what the appellate court did, they created an additional judgeship in Cook County. So the appellate court was then reversed. Does that case, in the limited facts that I've been able to give you, have any impact upon fashioning a remedy in this case? I believe so. I believe the court, on its own motion, reached back and determined that Ms. Earls was denied ballot access, and that she should have been allowed to be a candidate. I would say that the court could allow for a special election on that basis. Mr. Crumpton, your time has expired. Thank you. Counsel for the appellee. Good morning. May it please the court and counsel, my name is James P. Nally. I represent the appellee objector in this case, Eileen Jackson. Mr. Nally, what about the plain language? Isn't it the county is the only one that can take action to collect against the property owner in this circumstance? And isn't the plain language of the statute talks about a debt due to the municipality, and this debt was due to the county, right? No, that's not correct. The county is the collector for the municipality. The county, as the agent of the municipality, could file a suit or take a collection action against the taxpayer. But they are not the real party in interest. The real party in interest remains the government agency. If you look at the tax code, Justice Thomas, I think it makes it very clear the relationship between the Cook County Treasurer as a county collector and the various governmental bodies, including the City of Chicago. The tax code at 35 ILCS 200 slash 1.1 talks about the Cook County Treasurer collecting taxes. And the Treasurer, pursuant to section 19-35 of the tax code, is the ex-official collector for all the government agencies located within the county. However, the taxing bodies are the ones pursuant to section 18-15 that levy the tax. There would be no collection by the county unless the City of Chicago levied that tax, came to the county and said, now collect this on our behalf. And then the tax bill is itemized and collected on behalf of each taxing body. So the plain reading then, due to the municipality, you're saying in this case it was due to the city and the county was the agent. That's absolutely correct, a collection agent. Even though in common parlance, as we look at the wording of the statute, the check would have been written to the county. Correct, but those funds are actually, from the moment that check is written, a proportionate share of those funds that go to the municipality belong to that municipality. They are never the property of the county. In fact, it's called a Class A fund under section 1-1001, where it's collected and held by the collector on behalf of the municipality before it's distributed to the other government agencies. But it says very clearly, distributed to the government agencies or authorities entitled to receive the same. And they are even pursuant to section 20-140 of the tax code. These funds are held in escrow. There's a segregated account for the various government bodies. So at no time does the county take ownership of this money. The county is only a collection agency. Would the plaintiff have paid directly to the city? No, not for property taxes. They would pay the county collector, who is the collection agency, on behalf of the city as well as numerous other government agencies. Could the city go after the plaintiff? The city could go after the plaintiff through the county collector. There would be no direct collection action, Justice Burke. But there would be, however, a procedure where if somebody doesn't pay their property taxes, the county collector is the agent for the city and the other government agencies would institute collection action against the taxpayer. And that's very clear. The bills that are part of the record here, in fact, are required by statute to itemize on that bill. The various governmental agencies and the amounts of money each government agency is due to collect from their property tax levy. And on this case, we have a situation where the candidate here testified that she saw this bill. She was the one who paid the bill. Right on the bill there was, as to the 555 and the 552 Lawler properties, where she was not legally entitled to take a homeowner's exemption. A homeowner's exemption is listed right in the left-hand column of that bill. And in the right-hand column, it showed the proportionate share of that collection that was to go to the city of Chicago. Mr. Naylor, what about the fact that the nominating petitions were filed in November and there wasn't a letter indicating that there was a debt owed until December 6th? Well, the taxpayer is on notice when they get the property tax bill that they should not be taking that homeowner's exemption. So the taxpayer knew in 2008 and 2009 when these bills became due that this money was due and chose not to pay it. Chose not to go in and say, wait a minute, there's been a mistake here. I don't live at 555 Lawler or 552 Lawler. Therefore, I'm not entitled to that. There's no notice requirement, Justice Thomas, in the statute, in the municipal code. The municipal code is very clear. The Stenson v. Chicago Board of Election case, which came out of the same election cycle, addressed that. And said that it cannot be a person who is in arrears on a debt to the municipality basically has to do their due diligence. And the statute says nothing about a notice requirement to the candidate. It's up to the candidate to make sure they have their house in order and that they have paid all the obligations that they're required to pay to the municipality. But when does the obligation attach, right? I mean, she never received a bill for any alleged error in taking a homeowner's exemption until December 6th. When is it owed? When you should know that sometime in the future or when you get a bill? When she got her property tax bills showing that erroneous, fraudulent homeowner's exemption, she knew at that time that money was owed. And in fact, her testimony, if you look at the testimony, she talks about that at one point she says there was an omission on my behalf in the record. And also talks about she made the back payment. So she was aware that these taxes were due. She was aware that these homeowner's exemptions were not taken pursuant to the law. And that this money had been owed to the city from the time that tax bill issued. Should a candidate be allowed to rely on the municipality's assurance that there's no tax due, tax indebtedness owed? Well, let's talk about that. Let's talk about the document that was tendered to the candidate that the candidate is attempting to rely on here. Which is this letter from the, or this notice from the City Department of Revenue. And it says in pertinent part, quote, please accept this as confirmation that no outstanding debt was found across any of the debt types, parking, water, administrative hearings, inspection fees, cost recovery, and tax licensing. It doesn't address the property tax. So this was not a complete analysis of what the candidate might owe. The candidate still had to do their due diligence. For instance, candidates this past cycle also would have gone to the city clerk to determine if they owed anything for things such as dog licenses, vehicle stickers. So a letter from the Department of Revenue was not intended to be inclusive. And further, as we argued in our brief, as a matter of equitable estoppel, that cannot be asserted against a municipality for a ministerial act such as a letter from the Department of Revenue. Mr. Neely, couldn't you interpret the fact that the Department of Revenue didn't consider that that tax due was something due to them through this candidate, but through the pass-through of the assessor? They just didn't think it was due to them because they don't receive direct payment. And that's why you have to go to several sources sometimes to determine if you are indebted to the municipality. Revenue only has a certain area of tax or revenue collection for the city of Chicago. As I said, the city clerk, for instance, collects for vehicle stickers, dog licenses, things like that. But isn't that taking it a little far? I mean, a dog license, you think somebody should be denied access to the ballot because their dog license is expired? If you look at the municipal code and you look at this court's decision in Sinkis, it is pretty straightforward. And Sinkis made it very clear that this is a strict construction type of a situation. And this court's decision in Sinkis said as much because the same argument was made by Mr. Sinkis. Hey, I only owed $100 and as soon as the objection was filed mentioning the fact I owed $100, I ran over to the city clerk's office and tried to pay it, but they wouldn't take my money. But what Sinkis says is that at the time the nomination papers are filed, that's the Kodak moment. That's when you take the snapshot. And at that point, you are either in arrears or you're not in arrears. And how does knowledge fit into that equation? I don't think there's any notice requirement whatsoever. I mean, her knowledge. Well, again, the candidate here testified that she was the one who paid the bill. She saw the bill. The bill on its face shows that these homeowners exemptions were taken, were wrongfully taken, and that the city of Chicago was deprived of revenue as one of the taxing bodies enumerated there. So the knowledge is fulfilled at the time she received the 2008 tax bill? Yes. Thank you. When was the taxes due? The taxes for the 2008 bill would have been done in two installments, one in the spring and one in the fall, and the same in 2009, which would have been the spring and fall of 2010. But they would have been due prior to the filing on November 22, 2010, of the nomination papers of this candidate. So they occurred in time prior to that. My understanding is that even if you protest the taxes and you're trying to challenge them, you're required to pay the tax, and then at some subsequent time if a court adjudicates it in a way that says that the tax was not due, you get a refund, but the obligation is still on the taxpayer to pay those taxes at the time they're due. Mr. Nally, I've got actually a multiple part question here, if you can kind of help me through this. In your brief, the standard review you talk about really only addresses if there's a legal question. So my first part of the questions are these. One, what's the standard review on fact determinations? On a pure fact question, it's manifest weight. And this is administrative review out of the electoral board decision, is that right? That's correct. Can you help me, I mean, the threshold question, this is the second part in the statute, talks about ineligibility based on arrears in the payment of a tax or other indebtedness due to the municipality. So to get to the second question of, you know, whether it should go to the city or the county if that's ineligible, isn't it the threshold question we have to have presented to us of finding a fact that there is an arrearage on a payment of tax or other indebtedness due to the municipality? Is that correct? Is that the threshold or not? No, I don't think it's a threshold here because I don't think the facts are in dispute. Well, okay. Show me this. I mean, I may have been looking at the wrong thing, but the electoral board decision has a finding of fact in paragraph 20 on page, well, this is in your opponent's brief, it's labeled as A23, paragraph 20, says that the evidence that they received showed that the candidate conclusively rebutted any claim that the candidate was in arrears on debts to the city of Chicago. Now, it doesn't mention tax. It doesn't say that there was a debt either. The only reference to any arrearages is on the debt to the city. So I'm having trouble understanding, I like this legal question about is it owed to the city, is it the county, does that make her ineligible or not, but don't we still have to have a fundamental finding of an arrearage before we even proceed to step two? I think if you look at the electoral board's decision, what they said was that as far as this property tax debt, that's a debt owed to the assessor. They actually used the term assessor, which would be incorrect, as far as it would actually not be the assessor, it would be the city. So they made a factual finding that the debt was there, but it was owed to the assessor. Where is that in the decision? In the electoral board decision? Yeah. And what I'm trying to understand too is what is the significance of finding number 20, paragraph 20, if that says there's no debt? First of all, as to paragraph 20, they talked about the city of Chicago Department of Revenue letter regarding any claim the city was in arrears. So they were focusing solely on that. And then in adopting the decision of the recommended decision of the hearing officer, which the decision did, the hearing officer's decision, paragraph 17, discusses whether the debt was owed to the city or to the assessor, county assessor. So I think that there is a factual finding that it was not a debt owed because of the Department of Revenue letter, but our position is that didn't exhaust the issue of whether debt was owed. Okay. Well, that's your answer. Thank you. I would also like to address one additional thing that was brought up in the questioning of the appellant's attorney, and that would be the remedy here. The election is moot. The election took place February of 2011. And as far as any relief, I don't think, first of all, that any authority was cited to support any relief, such as a special election. More importantly, I think the law of the case applies here. The candidate did file with this court an emergency motion to stay the order of the appellate court, and also in that emergency motion asking for the election to be delayed or that a special election be held later on. And this court on February 23rd of 2011 issued an order denying that emergency relief. So any relief here, as far as any sort of an election goes, would be moot and actually controlled by the law of the case, this Court's prior order. When did she file that? I'm sorry, what date did she file that emergency motion? Because we understand that the appellate court case came out on Friday. Monday the courts were closed and Tuesday was the election. I believe she filed it on the 22nd and the order came out the 23rd, I'm pretty sure. During the day of the election. Yes. And the relief that would be sought here, I think, would be under the public interest exception to the mootness doctrine, where certainly if the court is looking to look at the Sinkis case and decide what the Sinkis case means in the context of debt owed, the City of Chicago, and a rearage in debt owed in municipality, it would be that type of a case, as often occurs in these election matters. I think you said somewhere in your brief that the plaintiffs come with unclean hands. Yes. Would you just touch on that briefly? Well, the plaintiff took homeowner's exemptions, which under the law they are not entitled to, where it was said very clearly that the principal residence was occupied on January 1st of that year. And now they're coming in as a result of the tenancy being terminated for failure to pay the property taxes that were due and asking this court for relief. And from an equitable standpoint, I don't think that that's proper. Well, you can correct me if I'm wrong, but this is not a proceeding in equity, is it? It's not a proceeding in equity, but the extent that they would be seeking equitable relief, such as some sort of prospective relief going back to the election. The respondent here initiated the proceeding. Would the clean hand doctrine apply to a movant or to a plaintiff? I think it would be both. Who seeks the benefit from the wrongdoings? The candidate here. The candidate failed to pay the property taxes that were owed and now is saying, despite the fact that I failed to do that, I'm asking this court for relief. Under the clean hand doctrine, the party asserting the doctrine must prove that the fraud or bad faith by the other party was directed at the first party. So how did Earl's unpaid taxes contribute to her attempt to seek the nomination? Well, there was a falsification of the homeowner's exemption request. And then when that resulted in the termination of the candidacy, the candidate is now saying, well, please ignore that, but I'm seeking the relief that I'm seeking from the court nonetheless. So on behalf, then, of the objector appellee, we would ask the court to review this matter. We believe the appellate court decision was well reasoned. It certainly brought together the components of the tax code and the municipal code explaining why this is indeed a debt in arrears to the city, which barred this candidacy, and that was the proper ruling in this case. And we ask that that be affirmed. Thank you. Thank you, Mr. Nally. Rebuttal, Mr. Crumpton. With regards to the issue of notice, the objector points out that Ms. Earls was on notice and that in the record was stated she paid the tax bills and she knew about those bills. That is not true. The court looks at the record. I believe in the record Ms. Earls does make a statement about the fact that she was on notice. She did make an offhand statement about paying the bills, but it's clearly in the record she states that her husband was responsible for the tax bills and when asked by counsel in a hearing with the tax assumptions, homeless assumptions of forms, her signatures on any of those assumptions, and she testified they were not. She was not aware of this issue, which is very different from the Sinkes case, where Mr. Sinkes was aware that he was indebted to the village of Stickney for the $100, and the village of Stickney did get a judgment against Mr. Sinkes, and that is what they used to say that Mr. Sinkes was not qualified to be on the ballot. Mr. Crumpton, it is not in dispute. Forget Ms. Earls' knowledge, but it is not in dispute, is it, that the property tax bill that would include arrears was prior to the filing of the nomination petition, that it was due prior to, that she had noticed that that was due prior to the date of the filing of the nominating petitions? The tax bill was out. The tax bills were out, but she did not have a knowledge. She did not have a knowledge of the homeowner's assumptions. There was no testimony. It could have been a situation where she bought a property, she lived in it, she took a homeowner's assumption, left that property, moved it to another property, and I don't want to speculate, and took a homeowner's assumption, and they did not counsel the other homeowner's assumption, or her husband didn't. I'm not sure, but I don't think that the Board of Elections, I think this goes beyond the scope or the authority of the Chicago Board of Elections, and I don't think that it was intended for the Board of Elections to have to decipher. The only inquiry I have is that if the tax bill was paid as submitted, I don't care if it was by her husband or her, we wouldn't have the issue, is that right? I mean, it would have been paid as submitted, the arrears would have been handled or could have been handled prior to the nominating petitions being filed. Am I right on that or wrong on that? When you said tax bill, you're talking about the letter that she received December 6th? I'm not understanding the question. You're talking about the letter that she received December 6th after the nomination petitions were filed? No, I know about that letter. I'm asking if the property council said that the property tax bill was out prior to the date of the filing of the nominating petition. Those property tax bills were paid prior to the nominations. However, the issue is the homeowner's exemptions that were taken. But the property tax bills were paid that they received that were due. I don't believe that's an issue. The issue is the homeowner's exemptions. And the first notice of that was December 6th? Well, it was dated December 6th. She received it sometime after December 6th. Okay. I think Mr. Nowley was arguing that the first notice was when the taxpayers received the tax bills, no matter when, showing three homestead exemptions. That was sufficient notice and that should have been corrected at that time, which was all prior to the filing. How do you respond to that? Again, the candidate was unaware. She testified that although she is responsible for helping with the bills, she's not the person that receives the bills and takes care of those bills. And, again, I think that the issue is getting complicated. I think that these are matters that will fall outside of what the Electoral Board are supposed to handle. And as far as with the well or not, in the Sinkers case, the village of Stiglitz was able to take action against Mr. Sinkers to collect their debt. In this particular case, in the appellate court's opinion, the appellate court points out, and I quote, that the property test code authorizes taxing districts to prosecute a suit against any collector receiving funds for their use by suit on the bond in the name of the people of the state of Illinois for failure of the collector to make the payments required. The legislature required the testing district, in this case the city of Chicago, to prosecute a suit against any collector receiving funds for their use. So the city of Chicago would not be able to bring an action against Ms. Earls. And it would be the same thing if Ms. Earls had paid her. If the exemptions were not taken and Ms. Earls had paid her taxes and the county had not paid the city, the city would still have to go up to the county collector to receive those monies. And would the city, could someone make a claim then that there's a debt owed by Earls to the city of Chicago? I mean, that could become an issue. So I believe that the Sinkers case does not intend to deal with those type of matters. And we ask that the court review this decision, determine that the appellate court was not correct and overruled the appellate court in this particular instance, and allow Ms. Earls an opportunity to have an election against the other person who was on the ballot on February 22nd. We did file, as the objective pointed out, we did attempt to file an emergency motion to stay the election. However, that emergency motion was filed the morning of the election, February 22nd. And I believe that we did not receive a decision on that until the day after the election, which it was because the election had been had and the motion was denied at that time. So we simply ask the court to find in the interest of the public and allow Ms. Earls to have her day, have her election against the person who's sitting in office currently and overruled the appellate court. Thank you for your time, and thank you for taking this case up. Thank you, Mr. Crumpton and Mr. Nally, for your arguments today. Case number 111928, Eileen Jackson versus the Board of Election Commissioners of the City of Chicago is taken under advisement as agenda number five.